[Cite as *State v. Heard*, 2016-Ohio-8186.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2015-CA-114 |
| | : | |
| v. | : | T.C. NO. 15CR328 |
| | : | |
| CHARLES HEARD | : | (Criminal appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___16th___ day of _____December_____, 2016.

. . . . . . . . . .

MEGAN M. FARLEY, Atty. Reg. No.0088515, Assistant Prosecuting Attorney, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

STEVEN H. ECKSTEIN, Atty. Reg. No. 0037253, 1208 Bramble Avenue, Washington C.H., Ohio 43160
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} Defendant-appellant Charles Heard appeals his conviction and sentence for aggravated vehicular homicide, in violation of R.C. 2903.06(A)(1)(a), a felony of the second degree; and operating a vehicle under the influence of alcohol or drugs, in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree. Heard filed a

timely notice of appeal with this Court on December 7, 2015.

{¶ 2} The incident which forms the basis for the instant appeal occurred on June 10, 2015, when Heard was driving a 1997 Dodge Ram truck near the 2100 block of Springfield-Xenia Road in Springfield, Ohio.   As he was driving, Heard veered off of the right side of the road and struck the victim, Tyree King, who was playing in his neighbor's front yard with a friend.   King died almost immediately after being hit by Heard.   Just prior to the crash, Heard was observed driving erratically.   Heard remained at the scene until the police and emergency crews arrived.

{¶ 3} Once the police arrived, Heard admitted to driving the Dodge Ram truck, and he had a strong odor of alcohol emanating from his person.   Heard also displayed glassy, bloodshot eyes and slurred speech.   Police discovered a bottle of alcohol in his truck, and Heard admitted to drinking before the crash.   At the hospital, Heard consented to having his blood drawn.   The result of his blood draw, which was taken within three hours of the crash, was reported to be .177 grams by weight of alcohol per one-hundred grams percent of whole blood, well over twice the legal limit.

{¶ 4} On June 29, 2015, Heard was indicted for Count I: aggravated vehicular homicide, in violation of R.C. 2903.06(A)(1)(a), a felony of the second degree; Count II: aggravated vehicular homicide, in violation of R.C. 2903.06(A)(2)(a), a felony of the third degree; Count III: operating a vehicle under the influence of alcohol or drugs, in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree; and operating a vehicle under the influence of alcohol or drugs, in violation of R.C. 4511.19(A)(1)(f), a misdemeanor of the first degree.

{¶ 5} On October 30, 2015, Heard entered guilty pleas to Counts I (aggravated

vehicular homicide) and III (operating a vehicle under the influence of alcohol or drugs). In exchange for his pleas, the State agreed to dismiss the remaining counts. During the plea hearing, the trial court and the parties agreed that Count I and Count III were allied offenses and would therefore merge for the purposes of sentencing. After engaging in a full Crim.R. 11 colloquy, the trial court accepted Heard's pleas, found him guilty, ordered a pre-sentence investigation (PSI), and set the matter for a sentencing hearing.

{¶ 6} At disposition on November 25, 2015, Heard was sentenced to eight years in prison on Count I (aggravated vehicular homicide) and six months imprisonment on Count III (operating a vehicle under the influence of alcohol or drugs). The trial court ordered the sentences to be served concurrently, for an aggregate prison term of eight years. We note that the trial court failed to merge the two counts at sentencing, and neither party brought the omission to the court's attention.

{¶ 7} It is from this judgment that Heard now appeals.

{¶ 8} Heard's first assignment of error is as follows:

{¶ 9} "THE TRIAL COURT ERRED IN IMPOSING A MAXIMUM SENTENCE UPON DEFENDANT-APPELLANT."

{¶ 10} In his first assignment, Heard argues that the trial court erred when it ordered him to serve a maximum eight-year sentence for Count I (aggravated vehicular homicide). Specifically, Heard argues that the record establishes that his sentence for Count I is clearly and convincingly contrary to law.

{¶ 11} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King,* 2013–

Ohio–2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard,* 194 Ohio App.3d 500, 2011–Ohio–3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis,* 109 Ohio St.3d 54, 2006–Ohio–855, 846 N.E.2d 1, ¶ 38.

{¶ 12} The principles and purposes of felony sentencing are set forth in R.C. 2929.11. The statutory "seriousness" and "recidivism" factors that guide a court's sentencing discretion are found in R.C. 2929.12. We have found that a trial court need not expressly state that it has considered R.C. 2929.11 and R.C. 2929.12. *See, e.g., State v. Guy,* 2d Dist. Clark Nos. 2015–CA–28, 2015–CA–29, 2016–Ohio–425, ¶ 16, quoting *State v. Neff,* 2d Dist. Clark No. 2012–CA–31, 2012–Ohio–6047, ¶ 5. In any event, the trial court here specifically referenced both statutes by number during the sentencing hearing, and it explicitly considered and applied both of them to the facts before it. (Sentencing Tr. at 17–20). It also stated in its sentencing entry that it had considered the factors set forth in R.C. 2929.12 and the principles and purposes of sentencing found in R.C. 2929.11. (Doc. # 32, at 1-2).

{¶ 13} At the sentencing hearing, the trial court made the following pertinent findings:

> The Court: I have reviewed the [PSI] which includes a lot of correspondence from family, friends, teachers, counselors, therapists, many of whom would like to see the Defendant given a life sentence. That's not going to happen. When we talk about the victims of the crime, the obvious victim is Tyree King, but this type of crime generates a lot of

victims, people that are attending counselling [sic].

Tyree was thirteen. With the news we have in this community on a daily basis, one starts to wonder if they are [sic] thirteen year olds with these qualities anymore. Tyree was going to start working out for football, not by himself. He was going to work out with his brother who was waiting for him to come back with the water who now feels it's his fault because he wasn't with him, and he keeps imagining what he could have done had he been with Tyree.

Well, the answer is, unless he was walking between Tyree and the street, he couldn't have done anything. He can imagine pushing Tyree out of the way, and we see that on movies and TV. The reality of it is, probably couldn't have happened. It was just too fast.

Taking that into consideration and reviewing the factors under [R.C.] 2929.12(B), making the offense more serious is that the victim, first of all, that would be Tyree, suffered the ultimate serious physical harm. He was killed, the other victims, serious psychological harm. Based upon some of the comments by counselors, that's a long time and a long term to be worked on, if ever, to resolve those psychological harms. They say time cures everything. It may lessen it. It won't cure it.

I find no factors under [R.C.] 2929.12(C). Under [R.C.] 2929.12(D), the Defendant does have a history of criminal convictions, and I am quite aware of the fact that the last offense was almost thirty years ago. Until this morning when he said he was sorry, I found no statements anywhere

that he had genuine remorse for the offense. He had never been adjudicated a diligent [sic] child, but I'm not sure what weight to give to someone seventy-one years old for that particular factor, and he had led a law abiding life for a significant number of years prior to committing this offense. There is no military service record to consider, and he scored low on the Ohio Risk Assessment Survey.

[R.C.] 2929.13(D) does not apply. This is a felony of the second degree, at least the aggravated vehicular homicide is, but it carries a mandatory prison sentence. Punish the offender, protect the community, and one of the things to consider when protecting the community, it talks about protecting the community from further offenses by this Defendant and from others who may find themselves tempted to do the same thing.

I can't imagine a worse scenario, two doors away from home, family members able to get to the scene, perhaps actually before he, Tyree, passed away, were there when that actually occurred. The courtroom is crowded with people, some of whom probably authored these letters talking about the mistake the Defendant had made when he decided to drink and then drive. The last time we had a courtroom this full of people for an aggravated vehicular homicide, I was sentencing a sixteen year old, and there were a lot of students in the courtroom then, too. And, unfortunately, I'm willing to bet afterwards they also drank and drove, some of them.

Based upon all the factors and taking into serious consideration the mitigating factors of this case as to age and significant lack of criminal

record, however, weighing that against the seriousness and the permanent harm, and there is no intent to do this, that would be a whole different charge, that's why there's only a possible eight year sentence as the maximum.

It is the order of the Court as to the charge of aggravated vehicular homicide that the Defendant serve a mandatory prison term of eight years. It is a further order of the Court as to the operated a vehicle while under the influence of alcohol and/or drugs that he be sentenced to a jail term of six months. He is to receive credit for jail time served from June 26th, 2015, until transported to the Ohio Department of Rehabilitation and Corrections.

{¶ 14} Additionally, the judgement entry of conviction states in pertinent part:

The Court has considered the record, oral statements, the purposes and principles of sentencing under R.C. 2929.11 and 2929.21, the seriousness and recidivism factors relevant to the offense and offender pursuant to R.C. 2929.12 and 2929.22, and the need for deterrence, incapacitation, rehabilitation and restitution and the sentencing guidelines contained in R.C. 2929.13. The Court is guided by the overriding purposes of felony and misdemeanor sentencing, including protection of the public from future crime by the offender and others and punishment of the offender, using the minimum sanctions that the Court determines will accomplish those purposes without imposing an unnecessary burden on state or local government resources.

{¶ 15} In reviewing felony sentences, appellate courts must apply the standard of

review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard. *See State v. Marcum,* 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, ¶ 9; *State v. Rodeffer,* 2013–Ohio–5759, 5 N.E.3d 1069 (2d Dist.). Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law. We do not review a trial court's sentence for an abuse of discretion. *Marcum* at ¶ 10.

{¶ 16} In *Marcum,* the Ohio Supreme Court made clear that the standard contained in R.C. 2953.08(G)(2) applies to all felony sentencing-term challenges. In the instant case, the trial court properly considered the criteria found in R.C. 2929.11 and R.C. 2929.12, and the record does not clearly and convincingly fail to support its decision to impose the maximum eight-year sentence for aggravated vehicular homicide. Having reviewed the entire record, including but not limited to the sentencing transcript and the PSI, we are unable to conclude that the sentence Heard received on Count I was contrary to law.

{¶ 17} Heard's first assignment of error is overruled.

{¶ 18} Heard's second and final assignment of error is as follows:

{¶ 19} "DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING."

{¶ 20} In his second assignment, Heard argues that he received ineffective assistance when his counsel failed to remind the trial court at sentencing to merge Count I (aggravated vehicular homicide) and Count III (operating a vehicle under the influence

of alcohol or drugs).   During the plea hearing on October 30, 2015, the trial court and the State agreed on the record that Count I and Count III would have to merge.   The record of the sentencing hearing, however, establishes that the trial court failed to merge the counts at disposition, and thereafter proceeded to sentence Heard to eight years on Count I and six months on Count III.   We note that the trial court ordered the sentences to be served concurrent to one another, but this has no bearing on whether Heard's counsel was deficient for failing to remind the trial court to merge Counts I and III.

{¶ 21} "We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, * * *.   Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland,* 466 U.S. at 688.   To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.*"   *State v. Mitchell*, 2d Dist. Montgomery No. 21957, 2008-Ohio-493, ¶ 31.

{¶ 22} "Generally, counsel's performance falls below the norm if he fails to advocate the defendant's cause, fails to keep the defendant informed of important developments, or fails to use the requisite level of skill necessary to ensure the integrity of the adversarial proceedings." *State v. Williams*, 2d Dist. Greene No. 2011 CA 44, 2012-Ohio-1240, ¶ 31, quoting *State v. Peeples,* 94 Ohio App.3d 34, 45, 640 N.E.2d 208 (4th

Dist.1994). Upon review, we find that defense counsel's performance was deficient when he failed to remind the trial court of its prior ruling that Counts I and III merged. But for defense counsel's failure to point out that the trial court and the State had previously agreed that the counts merged, there is a reasonable probability that the trial court would have properly merged Counts I and III. *Williams* at ¶ 31.

{¶ 23} Heard's second assignment of error is sustained.

{¶ 24} Heard's second assignment having been sustained, the trial court's judgment is hereby modified, pursuant to App.R. 12(B), to reflect that Count III is merged into Count I and that Heard is sentenced to eight years in prison on Count I. The matter is remanded to the trial court for the limited purpose of carrying this modified judgment into execution, including placing of record a revised sentencing entry reflecting this modification and notifying the appropriate prison officials of the modification set forth herein. No new sentencing hearing is required. As modified, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and FROELICH, J., concur.

Copies mailed to:

Megan M. Farley
Steven H. Eckstein
Hon. Richard J. O'Neill